UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 10-1928(DSD/JJK)

Hot Stuff Foods, LLC, a
South Dakota Corporation,

       Plaintiff,

v.                                            **ORDER**

Donald Greg Dornbach, individually
and d/b/a DGD Foods, LLC,

       Defendant.

    David Y. Trevor, Esq., Jana E. Bruder, Esq., Roy A. Ginsburg, Esq. and Dorsey & Whitney, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, counsel for plaintiff.

    Terrance W. Moore, Esq. and Steingart, McGrath & Moore, PA, 3300 Edinborough Way, Suite 601, Edina, MN 55435, counsel for defendant.

This matter is before the court on the motion of defendant Donald Greg Dornbach[1] ("Dornbach") to dismiss for failure to state a claim. After a review of the file, record and proceedings herein, and for the following reasons, the court grants Dornbach's motion in part.

---

[1] Dornbach is a citizen of Minnesota. (Compl. ¶ 3.)

BACKGROUND

In this diversity action, plaintiff Hot Stuff Foods, LLC ("Hot Stuff"),[2] asserts claims against Dornbach, its former executive employee. (Compl. ¶ 1.) Hot Stuff is a food service company. (Id. ¶ 2.) Prior to working for Hot Stuff, Dornbach was the Senior Vice President of Sales and Marketing at Lettieri's Inc. ("Lettieri's"), a company that manufactured and sold handheld food items to convenience stores. (Id. ¶¶ 9, 11.) According to the complaint, on October 30, 2006, Hot Stuff acquired Lettieri's, and "the corporation Lettieri's was merged into a corporation called HSFL Merger Corp., retaining the name Lettieri's." (Id. ¶¶ 10, 12.) Thereafter, Lettieri's became one of Hot Stuff's operating divisions and Dornbach served as its Senior Vice President of Sales. (Id. ¶¶ 10-11.) On December 31, 2006, "Lettieri's, Inc. merged into Hot Stuff." (Id. ¶ 12.)

Also on October 30, 2006, and in conjunction with the merger of Hot Stuff and Lettieri's, Dornbach entered into a Severance Protection Letter Agreement (the "Agreement") with "the new, post-merger Lettieri's." (Id. ¶ 13, Ex. 1.) The Agreement governed the terms of Dornbach's employment, and contained non-competition, non-solicitation and non-disclosure provisions. (Id. ¶¶ 15-24, Ex. 1.) It also provided that if Dornbach resigned for "Good Reason," the

---

[2] Hot Stuff is a South Dakota limited-liability company with its principal place of business in Sioux Falls, South Dakota. (Compl. ¶ 2.)

company would pay his salary and benefits for twelve months. (Id. ¶ 17, Ex. 1 ¶ 3(c).) A "Good Reason" included the company's failure to pay Dornbach's salary, annual bonus or benefits, its material breach of any agreement with Dornbach, and its relocation of its primary office to a site more than forty miles from Shakopee, Minnesota. (Id. Ex. 1 ¶¶ 1(j)(I)-(iii).) The Agreement specified that its term would commence upon "the closing of the merger of HSFL Merger Corp. with and into Lettieri's, Inc." (Id. Ex. 1 ¶¶ 1(e), 2.) The Agreement could not be assigned without Dornbach's written consent. (Id. Ex. 1 ¶ 11.)

On March 22, 2010, Dornbach submitted a written resignation letter to Hot Stuff. (Id. ¶ 38, Ex. 2.) In the letter, Dornbach explained:

> My Good Reasons for leaving are that:
> 1. The company's primary office has moved more than 40 miles from the Shakopee location where it was at the time of the [] Agreement ... ;
> 2. The company has failed to honor my executive bonus plan and benefit plan ... ; and
> 3. The company breached its agreement with me by not providing me the opportunity to earn a bonus of 100% of my salary as was agreed in October 2006.

(Id. ¶¶ 38-40, Ex. 2.) Furthermore, Dornbach noted that pursuant to the Agreement, "I am entitled to receive: (I) my accrued benefits; (ii) payment of my base salary ($185,000) for the next twelve months; and (iii) my health care coverage premium for 12

3

months." (Id. Ex. 2.) When Hot Stuff refused his request, Dornbach allegedly threatened to "rip up" the Agreement. (Id. ¶ 47.)

Hot Stuff claims that prior to resigning, Dornbach covertly arranged to enter into an independent business relationship with its customers, including Quik Trip, a chain of convenience store outlets that accounts for one-third of Hot Stuff's sales. (Id. ¶¶ 35-36.) Hot Stuff also alleges that Dornbach downloaded and copied its confidential pricing and business planning information from his work computer, including a "Rebate Calculator," "Confidential Expansion Plan" and a sales forecast listing "Targeted New Accounts." (Id. ¶ 41.) Lastly, Hot Stuff maintains that Dornbach now brokers sales between Hot Stuff's competitors and its current and prospective customers. (Id. ¶¶ 42-43.)

On April 30, 2010, Hot Stuff filed a complaint against Dornbach, alleging breach of contract, breach of fiduciary duty, tortious interference with business relations and violations of the Minnesota Uniform Trade Secrets Act ("MUTSA") and the Computer Fraud and Abuse Act ("CFAA"). In addition to damages, Hot Stuff seeks injunctive relief and a declaration that Dornbach lacked a

"Good Reason," as defined by the Agreement, to terminate his employment.[3] The court now considers Dornbach's June 1, 2010, motion to dismiss.

**DISCUSSION**

**I.  Rule 12(b)(6) Standard**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 129 S. Ct. at 1949 (quotations and citation omitted).

---

[3] At the July 20, 2010, hearing on this matter, counsel for both parties agreed that Hot Stuff's declaratory judgment claim is moot because Dornbach no longer seeks benefits pursuant to the Agreement. Accordingly, the court does not consider Hot Stuff's request for a declaratory judgment.

5

The court does not consider matters outside the pleadings under Rule 12(b)(6). See Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record and materials that are "necessarily embraced by the pleadings." See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). In this case, the parties agree that the court may consider the Agreement and Dornbach's resignation letter without converting this motion to one for summary judgment.

## II. Breach of Contract

Hot Stuff first claims that the Agreement is a valid and binding contract between it and Dornbach, and that Dornbach breached the Agreement's non-competition, non-solicitation and non-disclosure provisions, among others. (Compl. ¶¶ 14, 51(a)-(e).) To establish a breach of contract claim under Minnesota law,[4] Hot Stuff must show formation of a contract, performance of any conditions precedent by Hot Stuff, a material breach by Dornbach and damages. MSK EyEs Ltd. v. Wells Fargo Bank, N.A., 546 F.3d 533, 540 (8th Cir. 2008).

Dornbach argues that dismissal is warranted because Hot Stuff has not pleaded sufficient facts to establish the formation of a contract between the parties. According to Dornbach, Hot Stuff was not a party to the Agreement. Rather, the Agreement was between

---

[4] Both parties agree that Minnesota law applies.

6

Dornbach and Lettieri's, Inc., as it existed before the merger. Dornbach claims that the Agreement terminated on December 31, 2006, when he stopped working for Lettieri's, Inc. Moreover, Dornbach states that he never assigned the Agreement from Lettieri's, Inc. to Hot Stuff and, therefore, the Agreement did not govern the terms of his employment with Hot Stuff.

The court disagrees. From the facts alleged, the court may draw the reasonable inference that Hot Stuff was a party to the Agreement. Specifically, the facts before the court show that Dornbach entered into the Agreement as part of Hot Stuff's acquisition of Lettieri's and that the Agreement took effect after the merger occurred. In addition, the facts suggest that Dornbach knew that the Agreement governed his employment at Hot Stuff, as evinced by his attempt to enforce the Agreement against Hot Stuff in his resignation letter. In light of these circumstances, dismissal is not warranted at this stage of the proceedings. Because Hot Stuff has set forth sufficient facts to state a plausible breach of contract claim, the court denies Dornbach's motion with respect to this claim.

### III. Breach of Fiduciary Duty

Hot Stuff next argues that Dornbach breached the fiduciary duties of good faith, loyalty and care. To succeed on this claim, Hot Stuff must demonstrate the existence of a fiduciary duty, breach, causation and damages. See State Farm Fire & Cas. v.

7

Aquila Inc., 718 N.W.2d 879, 887 (Minn. 2006) (elements of negligence claim); Padco, Inc. v. Kinney & Lange, 444 N.W.2d 889, 891 (Minn. Ct. App. 1989) (negligence and breach of fiduciary duty claims use same elements). Under Minnesota law, the duty of loyalty prohibits an employee from soliciting his employer's customers for himself, or from otherwise competing with his employer, while he is still employed. See Rehab. Specialists, Inc. v. Koering, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987).

Dornbach urges the court to dismiss this claim on the basis that Hot Stuff asserts no facts showing that he competed with Hot Stuff while he was employed. Hot Stuff alleges, however, that while working for Hot Stuff, Dornbach solicited the business of Quik Trip, one of Hot Stuff's largest customers. (Compl. ¶¶ 35-36.) According to Hot Stuff, Dornbach made plans to resign from Hot Stuff and provide Quik Trip "supply chain management services" either individually or through DGD Foods, LLC, a company wholly owned by Dornbach. (Id. ¶ 36.) These facts suffice to state a plausible breach of fiduciary duty claim. Therefore, the court denies Dornbach's motion with respect to this claim.

**IV. Tortious Interference with Business Relations**

In addition, Hot Stuff alleges that Dornbach tortiously interfered with its existing and prospective contractual and business relations. To establish tortious interference with an existing contract, Hot Stuff must prove five elements: (1) the

8

existence of a contract, (2) the alleged wrongdoer's knowledge of the contract, (3) intentional procurement of its breach, (4) without justification and (5) damages. Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994) (citation and internal quotation marks omitted). To establish a claim of tortious interference with a prospective business relationship, Hot Stuff must prove that Dornbach intentionally and improperly induced a third party not to enter into or continue a business relationship with Hot Stuff. United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 633 (Minn. 1981) (citing Restatement (Second) of Torts § 766B (1979)).

In support of both claims, Hot Stuff asserts that as a Hot Stuff executive, Dornbach gained unique information about its existing and potential customers. (Compl. ¶ 63.) In addition to allegedly soliciting the business of Quik Trip, Hot Stuff argues that Dornbach began working as a broker for one or more of its customers after he resigned. (Id. ¶¶ 35-36, 42.) Hot Stuff alleges that Dornbach's new brokerage business threatens its future relationships with prospective clients. (See id. ¶ 45.)

These factual allegations are insufficient to raise Hot Stuff's right to relief on its tortious interference claims above the level of pure speculation. Hot Stuff has not pleaded any facts indicating that Dornbach procured the breach of its contractual relationship with Quik Trip or any other existing customer. To the contrary, the complaint states that despite Dornbach's efforts to

9

solicit Quik Trip's business, Quik Trip "refused to facilitate or countenance Dornbach's wrongdoing." (Id. ¶ 37.) Additionally, Hot Stuff has neither identified any prospective customer that Dornbach induced or otherwise caused not to enter into a contractual relationship with Hot Stuff, nor pleaded facts indicating that Hot Stuff has been damaged by Dornbach's alleged actions. Based on the information in the complaint, the court cannot draw the reasonable inference that Dornbach tortiously interfered with Hot Stuff's existing or prospective business relationships. Accordingly, the court grants Dornbach's motion without prejudice with respect to these claims.

**V.  MUTSA**

The court next considers Hot Stuff's MUTSA claim. To prove that Dornbach violated the MUTSA, Hot Stuff must show the existence of a trade secret and Dornbach's improper acquisition, disclosure or use of the trade secret. See Minn. Stat. § 325C.01 subdiv. 3; Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 897 (Minn. 1983). Dornbach argues that this claim should be dismissed because Hot Stuff has not pleaded facts that suggest the existence of a trade secret. A trade secret is information that must (1) not be generally known or readily ascertainable, (2) derive independent economic value from its secrecy and (3) be the subject of reasonable efforts to maintain its secrecy. See Minn. Stat. § 325C.01 subdiv. 5; Electro-Craft Corp., 332 N.W.2d at 899.

In the complaint, Hot Stuff alleges that Dornbach had access to confidential information concerning its business plans, pricing, margins and sales strategies. (Compl. ¶ 33.) Hot Stuff also asserts that when Dornbach resigned, he downloaded and copied some of this information, including its "Rebate Calculator," "Confidential Expansion Plan," a list of "Targeted New Accounts," and other material on potential new products and business pricing and planning. (Id. ¶ 41.) Hot Stuff alleges that the information Dornbach took had independent economic value, was not readily ascertainable by others, and that Hot Stuff took reasonable efforts to maintain its secrecy. (Id. ¶¶ 69-70.) Beyond these conclusory statements, however, Hot Stuff has not pleaded facts showing that the identified information contained trade secrets. Merely stating that the information is confidential is insufficient. Rather, Hot Stuff must set forth facts showing that the information had independent economic value due to its secrecy, was not readily ascertainable by others and that Hot Stuff took efforts to maintain its secrecy. Because Hot Stuff's complaint lacks the factual content necessary for the court to reasonably infer the existence of trade secrets, the court grants Dornbach's motion without prejudice with respect to this claim.

## VI. CFAA

Lastly, Hot Stuff alleges that Dornbach violated the CFAA by accessing its computers to download and copy trade secrets and

11

other confidential information without authorization. See 18 U.S.C. § 1030. Specifically, Hot Stuff alleges violations of sections 1030(a)(2)(C) and 1030(a)(4) of the CFAA. Those sections create criminal liability for any person who "intentionally accesses a computer without authorization or exceeds authorization and thereby obtains [] information from any protected computer" or who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." Id. §§ 1030(a)(2)(C), (a)(4).

While some circuits have found that the CFAA authorizes a civil action for a violation of any of the subsections of § 1030(a), the Eighth Circuit has not addressed this issue. Condux Int'l, Inc. v. Hauqum, No. 08-4824, 2008 WL 5244818, at *3 (D. Minn. Dec. 15, 2008) (collecting cases). This court has previously determined that "[a] party cannot bring a civil action [under the CFAA] based on provisions other than § 1030(a)(5)." Cenveo Corp. v. CelumSolutions Software GMBH & Co. KG, 504 F. Supp. 2d 574, 580 (D. Minn. 2007) (citing McLean v. Mortgage One & Fin. Corp., No. 04-1158, 2004 WL 898440, at *2 (D. Minn. Apr. 9, 2004)). But see Czech v. Wall Street On Demand, Inc., 674 F. Supp. 2d 1102, 1110-14 (D. Minn. 2009) (allowing civil action for violation of 18 U.S.C. § 1030(a)(2)(C)). In the instant case, the court finds no reason to abandon the precedent set forth in Cenveo and McLean.

Accordingly, Hot Stuff's CFAA claim fails as a matter of law, and the court grants Dornbach's motion with prejudice with respect to this claim.

**CONCLUSION**

Based on the above, **IT IS HEREBY ORDERED** that Dornbach's motion to dismiss [Doc. No. 4] is granted in part, as detailed below.

1.  With respect to Hot Stuff's tortious interference with business relations and MUTSA claims, Dornbach's motion is granted without prejudice;

2.  With respect to Hot Stuff's CFAA claim, Dornbach's motion is granted with prejudice, and;

3.  With respect to Hot Stuff's breach of contract and breach of fiduciary duty claims, Dornbach's motion is denied.

Dated: July 27, 2010

s/David S. Doty
David S. Doty, Judge
United States District Court